# EXHIBIT A

### Complaint in *United States v. Texas, et al.*, No. 1:24-cv-00008-RP (W.D. Tex. Jan. 3, 2024)

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF TEXAS; GREG ABBOTT, in his official capacity as Governor of Texas; TEXAS DEPARTMENT OF PUBLIC SAFETY; STEVEN C. MCCRAW, in his official capacity as Director of Texas Department of Public Safety,<br><br>    *Defendants*. | Case No. 1:24-cv-00008 |

**COMPLAINT**

1. The United States brings this action to preserve its exclusive authority under federal law to regulate the entry and removal of noncitizens. Texas's Senate Bill 4 (SB 4) creates purported state immigration crimes for unlawful entry and unlawful reentry, permits state judges and magistrates to order the removal of noncitizens from the country, and mandates that state officials carry out those removal orders. But Texas cannot run its own immigration system. Its efforts, through SB 4, intrude on the federal government's exclusive authority to regulate the entry and removal of noncitizens, frustrate the United States' immigration operations and proceedings, and interfere with U.S. foreign relations. SB 4 is invalid and must be enjoined.

2. "The Government of the United States has broad, undoubted power over the subject of immigration and the status of" noncitizens. *Arizona v. United States*, 567 U.S. 387, 394 (2012). Indeed, "the regulation of [noncitizens] is so intimately blended and intertwined with responsibilities of the national government that where it acts, and the [S]tate also acts on the same subject," the state law must give way. *Hines v. Davidowitz*, 312 U.S. 52, 66 (1941). Texas's SB 4 is preempted by federal law and thus violates the Supremacy Clause of the United States Constitution. That conclusion is strongly reinforced by the Foreign Commerce Clause, which is one of the sources of Congress's power to regulate immigration, and which simultaneously limits the power of the States to engage in such regulation. In this action, the United States seeks a declaration invalidating, and an order enjoining the enforcement of, SB 4 before it takes effect on March 5, 2024.

### JURISDICTION & VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and the United States seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants reside within this district and because a substantial part of the acts or omissions giving rise to this action occurred within this judicial district.

## PARTIES

5. Plaintiff, the United States, regulates immigration and conducts foreign relations under its constitutional and statutory authorities and through its Executive Branch agencies, including the Department of Homeland Security (DHS) and its component agencies—U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS)—the Department of Justice, and the Department of State.

6. Defendant State of Texas is a State of the United States.

7. Defendant Greg Abbott is the Governor of Texas. He is sued in his official capacity.

8. Defendant Texas Department of Public Safety (DPS) is an agency of Texas, responsible for enforcing the laws protecting the public safety and providing for the prevention and detection of crimes. Tex. Gov't Code § 411.002.

9. Defendant Steven C. McCraw is the Director of DPS. Tex. Gov't Code §§ 411.006(a)(1)–(2). He is responsible for the conduct of DPS's affairs and serves as executive director of DPS, among other duties and responsibilities. *Id*. He is sued in his official capacity.

## CONSTITUTIONAL AND STATUTORY AUTHORITIES

10. Under the Constitution's Supremacy Clause, the Constitution and federal immigration laws, including the Immigration and Nationality Act (INA), are—like all federal laws—"the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Through the Supremacy Clause, state laws may be preempted in various ways.

11. Under the doctrine of field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. "The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress

left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.*

12. State laws are also "preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399. "This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

13. The Constitution tasks the federal government with regulating immigration, foreign affairs, and foreign commerce. The Constitution affords the federal government the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, to "regulate Commerce with foreign Nations," *id.* art. I § 8, cl. 3, and to exercise authority inherent in the United States' national sovereignty, *see United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 318 (1936).

14. Thus, as the Supreme Court recognized, the "Government of the United States has broad, undoubted power over the subject of immigration and the status of" noncitizens. *Arizona*, 567 U.S. at 394. Congress has exercised its authority over immigration to make laws comprehensively governing the entry, admission, presence, status, and removal of noncitizens by enacting the INA, 8 U.S.C. § 1101 *et seq.*, and other laws regulating immigration.

15. As relevant here, Congress established a comprehensive, integrated framework governing the entry of noncitizens into the United States.[1] It has identified who may enter, *see*, *e.g.*, 8 U.S.C. §§ 1181–82, 1188, and how they may enter, *see*, *e.g.*, 8 U.S.C. §§ 1223–25.[2]

---

[1] Following the Homeland Security Act of 2002, many references in the to the "Attorney General" are now read to mean the Secretary of Homeland Security. *See* 6 U.S.C. § 557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

[2] This complaint uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton* v. *Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

3

16. Congress has also imposed federal criminal penalties on noncitizens who enter or reenter the United States unlawfully. Two provisions are most relevant here. First, 8 U.S.C. § 1325, titled "Improper entry by [noncitizen]," makes it a crime for any noncitizen to "enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers," such as the unlawful entry between ports of entry. Second, 8 U.S.C. § 1326, titled "Reentry of removed [noncitizens]," states that, subject to certain exceptions, "any [noncitizen] who . . . has been denied admission . . . or removed or has departed the United States while an order of . . . removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States . . . shall be fined . . . or imprisoned not more than 2 years, or both."

17. In terms of removal, the Supreme Court has confirmed "that the removal process" must be "entrusted to the discretion of the Federal Government," in part because a "decision on removability . . . touch[es] on foreign relations and must be made with one voice." *Arizona*, 567 U.S. at 409. Federal law sets forth a comprehensive removal framework. It identifies the grounds for removal, the requirements for commencing and administering removal proceedings, and the protections afforded to noncitizens throughout the process. *See*, *e.g.*, 8 U.S.C. §§ 1182, 1225, 1227, 1229, 1229a, 1231(a)–(b). For example, federal law states that during removal proceedings, which are overseen by specialized immigration judges, *see* 8 U.S.C. § 1101(b)(4), noncitizens must be given certain rights, including (i) the right to "be[] represented . . . by counsel of the [noncitizen's] choosing," and (ii) "a reasonable opportunity to examine the evidence against the [noncitizen], to present evidence on the [noncitizen's] own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4); *see also id.* § 1229a(b)(1). Congress has also provided for judicial review of final removal orders in a court of appeals, and allowed for a stay of removal pending judicial review. 8 U.S.C. § 1252; *Nken v. Holder*, 556 U.S. 418 (2009). Moreover, certain noncitizens may be subject to expedited removal proceedings described in 8 U.S.C. § 1225(b)(1), in which the noncitizens will be "removed from the United States without further hearing or review,"

unless they claim a fear of persecution or torture, or express an intent to apply for asylum. *Id.* § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4). There are further procedures to assess whether a noncitizen has a credible fear. *See* 8 U.S.C. § 1225(b)(1)(B)(v); 8 C.F.R. § 208.30.

18. A noncitizen may apply for relief or protection from removal. For example, with certain exceptions, *see* 8 U.S.C. § 1158(a)(2) & (b)(2), Congress has specified that a noncitizen "who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such [noncitizen's] status, may apply for asylum," *id.* § 1158(a)(1). In addition, certain noncitizens may be entitled to withholding of removal, with limited exceptions, *see id.* § 1231(b)(3)(B), if they establish the likelihood that they would face persecution if removed to the proposed country of removal, *id.* § 1231(b)(3). And noncitizens may also be entitled to protection from removal consistent with U.S. obligations under Article 3 of the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment (Convention Against Torture), if they would be tortured when removed to the proposed country of removal. 8 C.F.R. § 1208.16(c), 18(a). If the noncitizen is an unaccompanied child, Congress has provided additional protections, *see* 8 U.S.C. § 1232, including that the child must be transferred to the Office of Refugee Resettlement (ORR) of the Department of Health and Human Services (HHS), which generally must place the child with a care provider in the least restrictive setting that is in the best interest of the child, *id.* § 1232(c)(2)(A).

19. Federal law also provides recourse to noncitizens who are subject to removal proceedings. Certain noncitizens in removal proceedings may apply for relief from removal, 8 U.S.C. § 1229a(c)(4), and if ordered removed, may file a motion for reconsideration, *id.* § 1229a(c)(6), or reopening, *id.* § 1229a(c)(7). In lieu of being subject to removal proceedings or formal removal, certain noncitizens may be permitted to depart the United States at their own expense, at the discretion of federal immigration officials. *See id.* § 1229c. Further, federal law establishes a comprehensive process for the execution of removal orders, including how the United States determines where a noncitizen may be removed to and the physical

5

process of removal. *See id.* § 1231(b)–(c). Notably, federal law explicitly gives federal officials the responsibility to work with foreign governments to determine whether they will accept noncitizens who are subject to final removal orders. *See id.* § 1231(b)(1)–(2); 8 C.F.R. § 241.15; *see also* 8 U.S.C. § 1158(a)(2)(A) (noting bilateral agreements with foreign nations).

20. Congress has also established an enforcement apparatus to target those who enter unlawfully. For example, CBP, "in coordination with" ICE and USCIS, is tasked with "enforc[ing] and administer[ing] all immigration laws," including "the inspection, processing, and admission of persons who seek to enter . . . the United States" and "the detection, interdiction, removal, departure from the United States . . . of persons unlawfully entering, or who have recently unlawfully entered, the United States." 6 U.S.C. § 211(c)(8). And U.S. Border Patrol has "primary responsibility for interdicting persons attempting to illegally enter . . . the United States . . . at a place other than a designated port of entry." *Id.* § 211(e)(3).

21. Federal law also gives DHS "the power and duty to control and guard" the border against illegal entry and to "perform such other acts as . . . necessary for carrying out [such] authority." 8 U.S.C. § 1103(a)(3), (5). In doing so, immigration officers enforce prohibitions on unlawful entry. *See id.* § 1357(a) (detailing the authority of federal immigration officers to "interrogate" and "arrest" noncitizens "entering or attempting to enter the United States"); *see, e.g., id.* § 1357(a)(3) (authorizing access to certain private lands "for the purpose of patrolling the border to prevent the illegal entry of [noncitizens] into the United States"); H.R. Rep. No. 82-1377, at 3 (1957), 1952 U.S.C.C.A.N. 1358, 1360 (explaining that § 1357(a)(3) was designed to prevent illegal entries, protect "the national security," and preserve "the sovereign right of the United States to protect its own boundaries against the entry of [noncitizens]").

## SENATE BILL 4

22. On December 18, 2023, the Governor of Texas signed SB 4 into law, adding a Chapter 5B to the Texas Code of Criminal Procedure and a Chapter 51 to the Texas Penal

6

Code.[3] SB 4 will become effective on March 5, 2024. This new law would create new state crimes and impose state penalties on noncitizens who unlawfully enter or attempt to enter Texas. It also would allow state courts to order the removal of noncitizens from the country in lieu of being prosecuted for, or following successful prosecution of, such crimes. SB 4 contains three principal provisions.

23. First, SB 4 effectively makes it a state crime for a noncitizen to violate 8 U.S.C. § 1325(a), which as noted bars noncitizens from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." Like 8 U.S.C. § 1325(a), SB 4 bars noncitizens from "enter[ing] or attempt[ing] to enter [Texas] directly from a foreign nation at any location other than a lawful port of entry." SB 4, § 2, 88th Legis., 4th Spec. Sess. (Tex. 2023) (codified at Tex. Penal Code § 51.02(a)). SB 4 creates affirmative defenses to this crime if (1) the federal government has "granted" the noncitizen "lawful presence" or asylum, (2) the noncitizen "was approved for benefits under the federal Deferred Action for Childhood Arrivals program between June 15, 2012, and July 16, 2021," or (3) the noncitizen has not violated 8 U.S.C. § 1325(a). SB 4, § 2 (codified at Tex. Penal Code § 51.02(c)). SB 4's new state crime is punishable as a Class B misdemeanor, which includes a fine of up to $2,000 and/or imprisonment for up to 180 days. SB 4, § 2 (codified at Tex. Penal Code § 51.02(b)); *see* Tex. Penal Code § 12.22. If, however, the noncitizen had previously been convicted under SB 4, then a subsequent violation of that provision is a "state jail felony," SB 4, § 2 (codified at Tex. Penal Code. § 51.02(b)), which is generally punishable by a fine of up to $10,000 and/or imprisonment for a term between 180 days and two years, *see* Tex. Penal Code § 12.35(a)–(b).

24. Second, SB 4 seeks to track 8 U.S.C. § 1326(a), which generally bars noncitizens from "enter[ing], attempt[ing] to enter, or" being "found in, the United States" if they previously have been "denied admission . . . or removed" or "ha[ve] departed the United Stats

---

[3] *See* SB 4, as enacted, is available at Texas Legislature Online, https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=884&Bill=SB4.

7

while an order of . . . removal is outstanding." SB 4, similar to § 1326(a), makes it a crime for a noncitizen to "enter[], attempt[] to enter," or be found in Texas after the person "has been denied admission to" or removed from the United States, or "has departed from the" United States "while an order of . . . removal is outstanding." SB 4, § 2 (codified at Tex. Penal Code § 51.03(a)). Unlike with the state crime of unlawful entry, there are no affirmative defenses to a violation of the provision on unlawful re-entry. An order of "removal" means an order issued under either federal or state law or any other agreement in which a noncitizen stipulates to removal pursuant to a criminal proceeding under either federal or state law. SB 4, § 2 (codified at Tex. Penal Code § 51.03(c)). This new state crime is generally a Class A misdemeanor, punishable by a fine of up to $4,000 and/or imprisonment for up to one year. *See id.*; Tex. Penal Code § 12.22. Under certain circumstances, such a violation is a third-degree felony (with a maximum fine of $10,000 and/or imprisonment for a term between two to ten years) or a second-degree felony (maximum fine of $10,000 and imprisonment for a term between two and twenty years). SB 4, § 2 (codified at Tex. Penal Code § 51.03(b)); *see* Tex. Penal Code §§ 12.33, 12.34.

25. Texas courts cannot "abate the prosecution of an offense" under SB 4 "on the basis that a federal determination regarding the immigration status of the defendant is pending or will be initiated." SB 4, § 1 (codified at Tex. Code of Crim. Proc. Art. 5B.003).

26. Third, SB 4 allows state judges and magistrates to order the removal of noncitizens from the country. SB 4, § 1 (codified at Tex. Code of Crim. Proc. Art. 5B.002). When a person is charged (but not yet convicted) under SB 4, a magistrate judge or state judge may "discharge the person and require the person to return to the foreign nation from which the person entered or attempted to enter" if, among other things, "the person agrees to the order" and has not "previously been" charged with or convicted of certain specified crimes. SB 4, § 1 (codified at Tex. Code of Crim. Proc. Art. 5B.002(b), (c)). Additionally, if a person does not consent to removal and is ultimately *convicted* under SB 4, removal is mandatory. SB 4, § 1 (codified at Tex. Code of Crim. Proc. Art. 5B.002(d)). In that scenario, the state judge

8

"*shall* enter . . . an order requiring the person to return to the foreign nation from which the person entered or attempted to enter," with that order "tak[ing] effect on completion of the term of confinement or imprisonment imposed by the judgment." *Id.* (emphasis added). A noncitizen's failure to comply with a removal order is itself a second-degree felony. SB 4, § 2 (codified at Tex. Penal Code § 51.04).

27. SB 4 contains a severability provision, providing that if any application of any provision is found by a court to be invalid for any reason, the remaining applications of that provision to all other persons and circumstances shall be severed. SB 4, § 8.

### SB 4's EFFECTS ON IMMIGRATION OPERATIONS, FEDERAL LAW ENFORCEMENT, AND FOREIGN RELATIONS

28. If SB 4 takes effect, it will interfere with federal immigration operations, including the carefully calibrated law-enforcement scheme governing entry and the comprehensive removal scheme, which also includes relief or protection from removal. It will interfere with the exclusive authority of the federal government to control entry into the United States and removal of noncitizens to foreign countries as well as the conduct of foreign relations.

29. As the Supreme Court has recognized, the United States must speak with one voice in immigration matters. "The authority to control immigration—to admit or exclude [noncitizens]—is vested solely in the Federal government." *Truax v. Raich*, 239 U.S. 33, 42 (1915). "If it be otherwise, a single State [could], at her pleasure, embroil us in disastrous quarrels with other nations." *Chy v. Freeman*, 92 U.S. 275, 280 (1875). Thus, a "principal feature" of federal immigration laws "is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396.

30. SB 4 interferes with the comprehensive statutory scheme Congress enacted—in some cases by preventing the Executive Branch from executing that scheme at all.

31. Even to the extent that SB 4 "has the same aim as federal law and adopts its substantive standards," "[w]ere [SB 4] to come into force, the State would have the power to bring criminal charges against individuals for violating a federal law even in circumstances

9

where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402. Moreover, SB 4 imposes a unique scheme of state penalties for violations. *See id.* at 402–03 (noting "an inconsistency between [state law] and federal law with respect to penalties").

32. SB 4 would also impede the federal government's ability to take appropriate enforcement actions and assess a noncitizen's national-security and public-safety risks. For example, the time-sensitive enforcement tool of expedited removal may be unavailable to federal officials for noncitizens who are arrested, detained, and prosecuted by Texas. And if a noncitizen exits a port of entry without a federal removal order and later reenters the country, the federal government may not be able to prosecute the noncitizen for illegal reentry.

33. SB 4 also interferes with federal immigration proceedings. The state law forbids abatement of an SB 4 prosecution when the noncitizen has a pending determination of immigration status before the federal government, including an application for asylum or adjustment of status. SB 4, § 1 (codified at Tex. Code Crim. Proc. Art. 5B.003); *see* 8 U.S.C. § 1158(a)(1) (a noncitizen "who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such [noncitizen's] status, may apply for asylum"); *id.* § 1255 (providing that certain noncitizens are eligible to apply for adjust their status to that of a lawful permanent resident); 8 C.F.R. §§ 208.8, 1208.8 (a noncitizen's departure from the United States during the application process may be treated as an abandonment of their asylum application). A noncitizen facing SB 4 enforcement proceedings while a federal determination of their immigration status is pending—including but not limited to the removal proceeding—may be impeded from participating in the federal proceedings.

34. SB 4 would interfere with the federal government's ability to conduct foreign relations by imposing criminal penalties and immigration consequences on foreign nationals based on their entry into the United States. "The dynamic nature of relations with other

10

countries requires the Executive Branch to ensure that enforcement policies are consistent with this Nation's foreign policy." *Arizona*, 567 U.S. at 397.

36. The foreign-relations concerns are exacerbated because the purpose and effect of SB 4 would be to remove noncitizens to Mexico, regardless of their nationality. SB 4 permits state judges and magistrates to order the removal of noncitizens to Mexico, regardless of their country of citizenship, and without any indication that Mexico is willing to accept them, potentially subjecting noncitizens to further criminal penalty if Mexico denies entry. Texas's unilateral removal orders therefore may impair the United States' relations with Mexico. Indeed, Mexico has already expressed its opposition to SB 4, noting that SB 4 would interfere with Mexico's sovereign right to determine who enters its territory. *See* Press Release, Secretaría de Relaciones Exteriores (Nov. 15, 2023), *available at* https://perma.cc/RP7H-JXZR. In addition, Mexican President Lopez Obrador has stated that the Mexican government would engage the United States diplomatically through the Ministry of Foreign Affairs. Any diplomatic engagement with Mexico must occur through the federal government. By attempting to force "non-Mexican nationals" to return to Mexico, SB 4 "impose[s] a significant burden upon the Executive's ability to conduct diplomatic relations with Mexico." *Biden v. Texas*, 597 U.S. 785, 806 (2022).

36. SB 4 also does not accommodate the United States' treaty obligations, as implemented in federal law (many of which govern the treatment of foreign nationals), or statutory limitations on removal. For example, the United States is a party to the Convention Against Torture, which has been implemented through federal law to prohibit the return of noncitizens to a country where they are likely to face torture. 8 C.F.R. §§ 1208.16–.18; *see* 8 U.S.C. § 1231 note 2 (United States Policy with Respect to the Involuntary Return of Person in Danger of Torture). Similarly, under the international obligations of the 1967 United Nations Protocol Relating to the Status of Refugees, which Congress implemented in the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, noncitizens may be entitled to withholding of removal if they would be persecuted in the country of removal on account of race, religion,

nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). SB 4 does not provide a process or otherwise account for an individual who fears persecution (8 U.S.C. § 1231(b)(3)) or torture (implemented at 8 C.F.R. §§ 1208.16-.18). As a consequence, SB 4 could improperly result in refoulement of noncitizens—that is, the return of noncitizens to a country where they would face torture or persecution.

37. Moreover, the implementation of SB 4 would undermine U.S. efforts to convince governments worldwide to implement or strengthen their international protection systems and uphold their respective non-refoulement obligations. The international community would view SB 4 as a sign that the United States is scaling back its commitment to international protection and could encourage other governments to abandon or minimize their own efforts—all without a deliberate policy choice by the federal government.

38. By empowering state officials to arrest and commence removal proceedings against noncitizens who those officials suspect have entered or reentered the country illegally, SB 4 also risks the "unnecessary harassment" of certain persons. *Arizona*, 567 U.S. at 408. This too can impair the federal government's ability to conduct foreign relations. *See id.* at 395 ("It is fundamental that foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States.").

39. The federal government sent a letter to Texas on December 28, 2023, explaining that "SB 4 is preempted and violates the United States Constitution," and that "the United States intends to file suit to enjoin the enforcement of SB 4 unless Texas agrees to refrain from enforcing the law." Ex. 1. The letter noted, however, that if Texas "believe[s] there are any facts or law supporting the validity of SB 4," the State "should promptly bring them to our attention." *Id.* Texas has not done so.

**COUNT I — PREEMPTION**

40. Plaintiff realleges paragraphs 1 – 39.

41. SB 4 unconstitutionally intrudes on the federal government's exclusive authority to regulate the entry and removal of noncitizens and therefore is field preempted. Federal law delineates when it is unlawful for noncitizens to enter or reenter the United States and imposes penalties for violating those proscriptions. Federal law also establishes a comprehensive apparatus for the federal government to enforce those rules. *See generally* 6 U.S.C. § 211; 8 U.S.C. §§ 1103(a), 1225(d), 1325, 1326. It further sets forth a comprehensive framework governing the removal of noncitizens to foreign countries, a function that directly affects foreign relations. Federal law identifies the grounds for removal, the requirements for commencing and administering removal proceedings, the protections afforded to noncitizens throughout the process, and the process for selecting the country to which noncitizens may be removed. *See*, *e.g.*, 8 U.S.C. §§ 1182(a), 1225, 1227, 1229, 1229a, 1231(a)–(b). And the Supreme Court has confirmed "that the removal process" must be "entrusted to the discretion of the Federal Government," in part because a "decision on removability . . . touch[es] on foreign relations and must be made with one voice." *Arizona*, 567 U.S. at 409.

42. The federal interest is dominant in these areas: "[t]he power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the political branches of the Federal Government." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 864 (1982). That power stems from both Congress's authority to regulate immigration, *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977), and the President's "executive power to control the foreign affairs of the nation," *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Indeed, only the federal government is charged with the conduct of foreign affairs. *See, e.g., Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003) ("There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the concern for uniformity in this country's dealings with foreign nations that animated the Constitution's allocation of the foreign relations power to the National Government in the first place.").

13

Relatedly, the control of an international "border has a clear and strong connection to national security," *Hernandez v. Mesa*, 140 S. Ct. 735, 746 (2020), and "[n]ational-security policy is the prerogative of the Congress and President," *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017). SB 4's provisions criminalizing entry and providing for removal to foreign countries thus are field preempted.

43. SB 4's provisions also "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399. Congress granted the federal government the responsibility under federal law to regulate the entry and removal of noncitizens and granted federal officers broad discretion in the manner by which those provisions are enforced. By purporting to empower state officials to police unlawful entry and to remove noncitizens, SB 4 interferes with the federal government's statutory authority to enforce the entry and removal provisions of federal law, and it conflicts with various provisions of federal law permitting noncitizens to seek relief or protection from removal. Under SB 4, a noncitizen who is eligible for relief or protection from removal under federal law could be subject to removal under Texas law. As a consequence, SB 4 could result in the refoulement of such noncitizens. In this way, Texas is attempting to undertake its own removals without adhering to the removal scheme Congress devised.

44. Beyond that, federal officials must often work with foreign governments to determine whether they will accept noncitizens who are subject to final removal orders, the timing of such removals, and the logistics of such removals. *See* 8 U.S.C. § 1231(b). But States have no authority to do so. As a result, allowing Texas to conduct its own removal process would frustrate the United States' ability to handle noncitizen removals "with one voice." *Arizona*, 567 U.S. at 409.

45. SB 4's criminal provisions also are preempted by various other statutory provisions, which together form a framework for state assistance with the federal government's immigration enforcement in certain respects. Congress has mandated that state officials may assist in the enforcement of immigration law only with adequate training and supervision by

14

the federal government, 8 U.S.C. § 1357(g), and in specified circumstances, *see, e.g.*, *id.* § 1103(a)(10) (allowing the federal government to designate state officers for certain immigration enforcement in the face of an "imminent mass influx of" noncitizens); *id.* § 1252c (state officers "are authorized to arrest and detain an individual who . . . is [a noncitizen] illegally present in the United States," but only if, among other things, the individual "has previously been convicted of a felony" and is detained "only for such period of time as may be required for" federal immigration authorities "to take the individual into Federal custody"); *id.* § 1324(c) (allowing state officers to arrest individuals for certain crimes of human smuggling). None of these statutory provisions, however, permits a State to impose criminal penalties for illegal entry or reentry or to remove noncitizens.

46. Other statutory provisions highlight the conflict between SB 4 and federal law. For example, while both federal law and SB 4 criminalize the reentry of removed or deported noncitizens, federal law includes exceptions, like consent from the Secretary of Homeland Security. *See* 8 U.S.C. § 1326. But SB 4's reentry provision has no affirmative defenses or exceptions, prohibiting noncitizens' reentry even if they have the Secretary of Homeland Security's permission, thus conflicting with the federal scheme. In addition, noncitizens who were paroled into the United States under certain DHS parole processes or who otherwise legally reentered the United States after removal may also be prosecuted under SB 4 for illegal reentry because the law extends to any noncitizen "found in th[e] state." SB 4 § 2 (codified at Tex. Penal Code § 51.03(a)). And to the extent Texas seeks to arrest, detain, and prosecute unaccompanied noncitizen children, that would conflict with the protections Congress afforded such noncitizens, including transfer to HHS's ORR and placement in the least restrictive setting that is in the best interest of the child. *See* 8 U.S.C. § 1232.

### COUNT II — FOREIGN COMMERCE CLAUSE

47. Plaintiff realleges paragraphs 1 – 46.

15

48. The Commerce Clause allows Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "One of the major defects of the Articles of Confederation, and a compelling reason for the calling of the Constitutional Convention of 1787, was the fact that the Articles essentially left the individual States free to burden commerce both among themselves and with foreign countries very much as they pleased." *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 283 (1976). Under the Constitution, "[f]oreign commerce is pre-eminently a matter of national concern." *Japan Line, Ltd. v. Los Angeles Cty.*, 441 U.S. 434, 448 (1979). And the Foreign Commerce Clause is one of the sources of Congress's power to regulate immigration through the INA and other statutes. The Foreign Commerce Clause thus strongly reinforces the preemptive force of the federal immigration scheme as discussed above.

49. Here, SB 4 improperly regulates foreign commerce itself. It regulates *solely* the movement of noncitizens across an international boundary *into* Texas. "Although the Commerce Clause speaks only of Congress's power, it has long been understood that there is a dormant or negative aspect of the Commerce Clause that limits the power of the states to regulate commerce." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 749 (5th Cir. 2006).

50. SB 4 also improperly "create[s] a substantial risk of conflicts with foreign governments" and "undermine[s] the ability of the federal government to 'speak with one voice' in regulating commercial affairs with foreign states." *Piazza's Seafood*, 448 F.3d at 750. By attempting to force "non-Mexican nationals" to return to Mexico, SB 4 "impose[s] a significant burden upon the Executive's ability to conduct diplomatic relations with Mexico." *Biden*, 597 U.S. at 806. And Mexico has already asserted its right to "determine its own policies regarding entry into its territory" by "categorically reject[ing] any measure" like SB 4 that "allows state or local authorities to detain and return Mexican or foreign nationals to Mexican territory." Press Release, Secretaría de Relaciones Exteriores (Nov. 15, 2023).

**PRAYER FOR RELIEF**

The United States respectfully requests that this Court:

a) Declare that SB 4 violates the Supremacy Clause and Foreign Commerce Clause and is therefore invalid;

b) Preliminarily and permanently enjoin Defendants—as well as their successors, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with those individuals—from enforcing SB 4;

c) Award the United States its costs in this action; and

d) Grant any other relief this Court deems just and proper.

DATED: January 3, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JAIME ESPARZA
United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

JEAN LIN
Special Litigation Counsel, Federal Programs Branch

/s/ Stephen Ehrlich
STEPHEN EHRLICH
KUNTAL CHOLERA
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-9803
Email: stephen.ehrlich@usdoj.gov

Samuel M. Shapiro
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216
samuel.shapiro@usdoj.gov
Tel: (210) 384-7392

*Attorneys for the United States*

17