```
  1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE WESTERN DISTRICT OF TEXAS
  2                            AUSTIN DIVISION

  3   LAS AMERICAS IMMIGRANT ADVOCACY      ) AU:23-CV-01537-DAE
      CENTER, AMERICAN GATEWAYS, COUNTY OF )
  4   EL PASO, TEXAS, LA UNION DEL PUEBLO  )
      ENTERO, SARAH DOE, MARY DOE, JOHN DOE,)
  5   JAMES DOE,                           )
                                           )
  6      Plaintiffs,                       )
                                           )
  7   v.                                   ) AUSTIN, TEXAS
                                           )
  8   DEPUTY DIRECTOR FREEMAN F. MARTIN,   )
      JAMES MONTOYA, GREGORY ABBOTT,       )
  9   WARREN K. PAXTON, TORIBIO PALACIOS,  )
      BRYAN GOERTZ, JOSH TETENS, KIM OGG,  )
 10                                        )
         Defendants.                       ) JUNE 17, 2025
 11
              ***********************************************
 12                  TRANSCRIPT OF STATUS CONFERENCE
                   BEFORE THE HONORABLE DAVID A. EZRA
 13           ***********************************************

 14   APPEARANCES:

 15   FOR THE PLAINTIFFS:  KATE GIBSON KUMAR
                           TEXAS CIVIL RIGHTS PROJECT
 16                        1405 MONTOPOLIS DRIVE
                           AUSTIN, TEXAS 78723
 17
                           DAVID A. DONATTI
 18                        ACLU OF TEXAS
                           PO BOX 8306
 19                        HOUSTON, TEXAS 77288

 20                        JULIA RENEE LONGORIA
                           MEXICAN AMERICAN LEGAL DEFENSE
 21                        AND EDUCATIONAL FUND
                           110 BROADWAY, SUITE 300
 22                        SAN ANTONIO, TEXAS 78205

 23                        LYNN DAMIANO PEARSON
                           HILDA BONILLA
 24                        NATIONAL IMMIGRATION LAW CENTER
                           P.O. BOX 34573
 25                        WASHINGTON, D.C. 20043
```

```
1   FOR THE DEFENDANTS:   MONROE DAVID BRYANT, JR.
                          MUNERA AL-FUHAID
2                         TEXAS ATTORNEY GENERAL'S OFFICE
                          SPECIAL LITIGATION DIVISION
3                         P.O BOX 12548
                          AUSTIN, TEXAS 78711-2548
4
                          JAMES MONTOYA
5                         DISTRICT ATTORNEY FOR THE
                          34TH JUDICIAL DISTRICT
6                         201 EL PASO COUNTY COURTHOUSE
                          500 E. SAN ANTONIO
7                         EL PASO, TEXAS 79901

8                         WILLIAM HOWARD FARRELL
                          TEXAS OFFICE OF ATTORNEY GENERAL
9                         209 WEST 14TH STREET
                          AUSTIN, TEXAS 78701
10
    TRANSCRIBER:          ARLINDA RODRIGUEZ, CSR
11                        501 WEST 5TH STREET, SUITE 4152
                          AUSTIN, TEXAS 78701
12                        (512) 391-8791

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by electronic sound recording, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 14:29:41 | 1 | (Open court) |
| 14:29:41 | 2 | THE CLERK:  Austin 23-CV-1537, Lead Case *Las* |
| 14:29:45 | 3 | *Americas Immigrant Advocacy Enter, et al. v. Martin,* |
| 14:29:50 | 4 | *et al.* |
| 14:29:50 | 5 | THE COURT:  All right.  Can we have appearances |
| 14:29:52 | 6 | please. |
| 14:29:57 | 7 | MR. DONATTI:  Good afternoon, Your Honor. |
| 14:29:59 | 8 | David Donatti for Las Americas, American Gateways, and |
| 14:30:01 | 9 | El Paso. |
| 14:30:05 | 10 | MS. KUMAR:  Kate Gibson Kumar, also on behalf |
| 14:30:07 | 11 | of American Gateways and Las Americas. |
| 14:30:13 | 12 | MS. LONGORIA:  Julia Longoria on behalf of |
| 14:30:16 | 13 | LUDPE plaintiffs. |
| 14:30:21 | 14 | MS. PEARSON:  Lynn Damiano Pearson on behalf of |
| 14:30:23 | 15 | Doe plaintiffs in the *LUDPE* case. |
| 14:30:29 | 16 | MS. BONILLA:  Hilda Bonilla on behalf of the |
| 14:30:29 | 17 | Doe plaintiffs in the *LUDPE* case. |
| 14:30:31 | 18 | THE COURT:  Okay. |
| 14:30:34 | 19 | MR. BRYANT:  Your Honor, David Bryant from the |
| 14:30:36 | 20 | Texas Attorney General's Office, along with |
| 14:30:40 | 21 | Munera Al-Fuhaid, for the State defendants |
| 14:30:42 | 22 | Governor Abbott, Attorney General Paxton, and |
| 14:30:45 | 23 | Freeman Martin, director of DPS. |
| 14:30:48 | 24 | THE COURT:  Okay. |
| 14:30:54 | 25 | MR. FARRELL:  Your Honor, William Farrell, also |

```
14:30:57  1   with the Attorney General's Office, here on behalf of
14:31:01  2   Josh Tetens, the McClennan County District Attorney, and
14:31:04  3   Bryan Goertz, Bastrop County District Attorney.
14:31:08  4            MR. MONTOYA:  Good afternoon, Your Honor.
14:31:09  5   James Montoya, here in my official capacity as the
14:31:12  6   Elected District Attorney for the 34th Judicial District.
14:31:15  7            THE COURT:  Okay.  Very good.  Thank you.
14:31:16  8       All right.  The parties have requested this
14:31:22  9   status conference, and I am more than happy to have it so
14:31:30  10  that we can clarify a few things and figure out -- I
14:31:35  11  don't think both parties.  I think somebody requested it.
14:31:42  12           MR. BRYANT:  Your Honor, we did not request it,
14:31:44  13  and I'm not aware of --
14:31:45  14           THE COURT:  I thought the parties requested it.
14:31:46  15           MR. BRYANT:  -- any party requesting it.
14:31:48  16       I think we did request a postponement of the
14:31:50  17  status conference that the Court originally set for
14:31:53  18  May 28th because a number of us were in trial in El Paso.
14:31:57  19           THE COURT:  Oh, that's what it was, and then we
14:31:59  20  reset it.  Okay.  All right.  That's where I got that
14:32:02  21  from.  Okay.  Thank you for clarifying that.  And I did
14:32:05  22  grant that continuance, obviously.
14:32:09  23       All right.  So we do have a number of items
14:32:14  24  that we need to take up and to address.  The first one is
14:32:19  25  Mr. Montoya's motion to substitute himself as *pro se*.
```

```
14:32:27   1              Now, this presents a unique legal issue that,
14:32:36   2   quite frankly, I have never heard of before or seen
14:32:43   3   before.  Mr. Montoya is the elected district attorney for
14:32:52   4   the County of El Paso; is that right?
14:32:57   5              MR. MONTOYA:  That's correct.  El Paso,
14:33:01   6   Hudspeth, and Culberson Counties.
14:33:01   7              THE COURT:  Okay.  Very good.  And you have
14:33:08   8   indicated in your filings that you do not intend to
14:33:12   9   defend the constitutionality of the statute.  Am I
14:33:15  10   correct?
14:33:15  11              MR. MONTOYA:  That's correct, Your Honor.
14:33:17  12              THE COURT:  Okay.  Which is a different
14:33:19  13   position than your predecessor took, I believe?
14:33:22  14              MR. MONTOYA:  To a degree.  Yes, sir.
14:33:23  15              THE COURT:  All right.  Now, here's the concern
14:33:27  16   that I have, and it's not with you at all.  It's more of
14:33:31  17   a legal issue.  There is no question in my mind that you
14:33:37  18   have the right as district attorney to represent the
14:33:41  19   county.  Okay?
14:33:43  20              You have not been sued in your individual
14:33:47  21   capacity.  In other words, nobody sued you, Mr. Montoya,
14:33:51  22   as Mr. Montoya.  There's nobody seeking any relief
14:33:55  23   against you personally.  The relief that they are seeking
14:33:59  24   is against the county.  So it does not appear that you
14:34:06  25   would be appearing pro se to represent yourself because
```

14:34:12  1  there's no -- you have not been or become as an

14:34:18  2  individual a defendant in this case.

14:34:20  3          So I think what you really want the Court to do

14:34:24  4  is to give you authority to not have an outside lawyer

14:34:31  5  but, rather, yourself represent, as district attorney,

14:34:37  6  the county.

14:34:39  7          MR. MONTOYA:  That's correct, Judge.  To

14:34:40  8  represent our judicial district -- or my judicial

14:34:43  9  district.

14:34:44  10         THE COURT:  Okay.  So I have no problem with

14:34:46  11 that, obviously.  Now, normally, we don't see that.  What

14:34:49  12 we see is someone in your position have one of their

14:34:53  13 deputies -- for instance, we don't have Attorney General

14:34:56  14 Paxton sitting here.  We have his deputy sitting here.

14:35:01  15 And you have deputies in your office, I presume.  El Paso

14:35:06  16 County is big county.

14:35:08  17         MR. MONTOYA:  I do, yes.

14:35:09  18         THE COURT:  But you intend to do this yourself;

14:35:11  19 is that right.

14:35:11  20         MR. MONTOYA:  Yes, sir.

14:35:12  21         THE COURT:  Okay.  So you have the Court's

14:35:13  22 permission to do that, of course.  I don't think you need

14:35:16  23 my permission to do it.  I think you're entitled to do it

14:35:19  24 as a matter of right.  But you wouldn't be *pro se*.  You

14:35:22  25 would be actually acting in your capacity as the district

14:35:28  1  attorney representing the El Paso County and the other

14:35:33  2  counties that you represent who are parties to this case.

14:35:43  3          Are you a member of the Western District of

14:35:44  4  Texas?

14:35:46  5          MR. MONTOYA:  As of last week, Your Honor, I

14:35:48  6  am.

14:35:48  7          THE COURT:  Oh, you are?  Okay.  Very good.

14:35:51  8          All right.  Okay.  So we will definitely do

14:35:59  9  that.  Now, I do have the authority to realign parties in

14:36:08  10  the sense, although you're a defendant, you're not

14:36:11  11  actually a defendant.  You're almost a plaintiff in this

14:36:15  12  case in terms of what you're taking -- the position

14:36:17  13  you're taking.  But you're -- but they're seeking relief,

14:36:20  14  so I don't know.  I'm not going to do any realigning now.

14:36:25  15          MR. DONATTI:  Yes, Your Honor.  And if I could

14:36:26  16  just clarify.  So we represent El Paso County, and we

14:36:30  17  named his predecessor, Mr. Hicks, as an *Ex parte Young*

14:36:34  18  defendant.  And so we did name, in his official capacity,

14:36:37  19  the district attorney.

14:36:40  20          THE COURT:  Well, that's right.  He's

14:36:42  21  representing himself in his official capacity as district

14:36:44  22  attorney.

14:36:45  23          MR. DONATTI:  That's right.  And, just to

14:36:46  24  clarify, we represent the County.

14:36:47  25          THE COURT:  Oh, yeah.

```
14:36:48   1              MR. DONATTI:  So the County is represented.
14:36:50   2              THE COURT:  Oh, yeah.  I know that.  But so
14:36:52   3   does he.
14:36:53   4              MR. DONATTI:  Yes.
14:36:55   5              THE COURT:  That's why it's -- we have the same
14:37:00   6   party, essentially, on both sides of the case, which
14:37:03   7   is -- has anybody else ever seen that?  I've never seen
14:37:07   8   it before, to my knowledge.
14:37:09   9              MR. BRYANT:  I've never seen it, Your Honor.
14:37:11  10   But it suggests to me that there isn't really a case or
14:37:15  11   controversy as between El Paso County and the DA, in that
14:37:19  12   they're suing to enjoin him from prosecuting or taking
14:37:25  13   action under SB 4, and he obviously is not interested in
14:37:31  14   doing that.
14:37:32  15              THE COURT:  Well, he's indicated he isn't.  But
14:37:35  16   who knows?  By the time we ever get to the trial in this
14:37:40  17   case, he may be governor of Texas.  I don't know.  You
14:37:43  18   know, as long as this case has been rolling on, you know.
14:37:46  19              Anyway, at the moment he can represent the
14:37:54  20   party that's been sued in this case.  Okay.  Because he
14:37:58  21   is the district attorney.  He was sued as the district
14:38:00  22   attorney.  He can do it.  And later on, if he wishes
14:38:05  23   to -- if the plaintiff, for instance, wishes to move to
14:38:10  24   dismiss him as a defendant, they can do that, because it
14:38:15  25   doesn't appear -- I agree with counsel, by the way.  It
```

14:38:18   1  doesn't appear that -- it appears you're suing him to

14:38:23   2  stop him from doing something which he doesn't intend to

14:38:26   3  do.  Do you see what I'm saying?

14:38:31   4           MR. DONATTI:  I understand, Your Honor, yes.

14:38:33   5  That is -- that is an issue that we can work through.

14:38:36   6  There are examples of suing *Ex parte Young* defendants who

14:38:40   7  have varying perspectives on their duties under state

14:38:43   8  law.  There are --

14:38:45   9           THE COURT:  That's why I said I have no

14:38:46  10  intentions today of making any rulings on this, okay,

14:38:50  11  until I can look into it more carefully and we can let it

14:38:53  12  kind of percolate and see where we are.  All right?

14:38:58  13           All right.  Now, the *La Union* defendants have

14:39:04  14  not answered all of them, I don't think, have you?

14:39:08  15           MS. LONGORIA:  Have not answered all the --

14:39:10  16           THE COURT:  In *La Union*.

14:39:12  17           MS. LONGORIA:  Have not answered all of what?

14:39:17  18           THE COURT:  I'm going to order all the

14:39:19  19  defendants to answer the *La Union* complaint, okay?  Has

14:39:22  20  that been done?  I don't think so.

14:39:26  21           MS. LONGORIA:  No, we have not.  That has not

14:39:27  22  been answered to all -- to our complaint.

14:39:30  23           THE COURT:  Okay.  That has to be done.

14:39:32  24           MR. BRYANT:  La Union sued, in addition to

14:39:35  25  state defendants, sued four district attorneys.

| | | |
|---|---|---|
| 14:39:38 | 1 | THE COURT: Right. |
| 14:39:39 | 2 | MR. BRYANT: And Mr. Farrell represents two of |
| 14:39:42 | 3 | them, but two of them have not appeared at all in court. |
| 14:39:45 | 4 | That's the district attorney of Harris county and the |
| 14:39:48 | 5 | district attorney of Hidalgo County. |
| 14:39:51 | 6 | THE COURT: That's right. They haven't made |
| 14:39:53 | 7 | any appearance. Well, you know, you can take a default |
| 14:39:57 | 8 | against them. Were they properly served? |
| 14:40:01 | 9 | MS. LONGORIA: Yes, they were probably served. |
| 14:40:02 | 10 | THE COURT: Well, you know, it's not for me to |
| 14:40:05 | 11 | do it. You know, you need to take action. |
| 14:40:08 | 12 | MS. LONGORIA: Yes, sir. |
| 14:40:08 | 13 | THE COURT: So you can take a default if they |
| 14:40:10 | 14 | haven't answered. |
| 14:40:11 | 15 | MS. LONGORIA: Yes, sir. |
| 14:40:15 | 16 | THE COURT: I mean, that's what normally |
| 14:40:17 | 17 | happens when someone doesn't answer a complaint, right? |
| 14:40:20 | 18 | MS. LONGORIA: Yes, sir. |
| 14:40:20 | 19 | THE COURT: Okay. Now, we have pending right |
| 14:40:25 | 20 | now Defendants Abbott, Paxton and Martin's motions to |
| 14:40:29 | 21 | dismiss in *La Union*, right? And that motion was -- was |
| 14:40:37 | 22 | supposed to have been been filed in the *Las Americas* |
| 14:40:40 | 23 | case, because we've consolidated them. And the *Las* |
| 14:40:43 | 24 | *Americas* cases, I ordered that all filings -- that's the |
| 14:40:47 | 25 | lead case -- that all filings be made in that case. So |

14:40:51  1  that motion to dismiss was actually filed in the wrong

14:40:54  2  case.

14:40:56  3         But it doesn't matter, because here is what I'm

14:40:59  4  going to do, in any event:  I am going to deny, without

14:41:03  5  prejudice, subject to refiling, all motions to dismiss

14:41:11  6  that are currently on the docket.  Okay?

14:41:15  7         And the reason for that is that we're currently

14:41:23  8  on appeal, and we don't have yet a decision out of the

14:41:26  9  Fifth Circuit on that appeal.  And while I have every

14:41:35  10 right and responsibility to move forward with the case on

14:41:38  11 those matters that are not taken up on appeal, like these

14:41:43  12 ministerial matters we're dealing with now, the motion to

14:41:45  13 dismiss, in effect, deals with some of the issues that

14:41:53  14 are at least tangentially in the Fifth Circuit Court of

14:41:58  15 Appeals, to some degree.

14:41:59  16        Now, to what degree it's hard to say, because

14:42:05  17 I'm not a member of the Fifth Circuit Court of Appeals,

14:42:07  18 and I don't know what their view of how expansive they

14:42:10  19 believe that their view will be of the motion and what

14:42:13  20 issues they intend to take up.

14:42:18  21        For instance, I can give you an example.  Some

14:42:20  22 of you were involved in that case.  In the buoy case, the

14:42:25  23 decision that was entered by the Fifth Circuit *en banc*, a

14:42:29  24 very narrow ruling in terms of the Fifth Circuit, almost

14:42:37  25 split half and half, they addressed issues that were much

14:42:47  1   more expansive in my view -- and this was not just my

14:42:49  2   view; it was the view of half of the Fifth Circuit --

14:42:52  3   than what was actually presented.

14:42:55  4           They made some rulings in that case, and I

14:42:59  5   think -- I'm not criticizing them at all.  I don't mean

14:43:03  6   to suggest that I think they did anything wrong.  They

14:43:06  7   didn't do anything wrong.  They had every right to do

14:43:08  8   what they did.  But they took a very expansive view of it

14:43:16  9   and made some rulings which obviously impact the later

14:43:18  10  trial.

14:43:19  11          And, in fact, we he had some discussions about

14:43:27  12  that, and I think that, I believe -- I don't know whether

14:43:31  13  it was Judge Oldham or which one of the judges made a --

14:43:36  14  made a written statement in their order that they felt

14:43:43  15  the Court would be bound by it at the later trial even

14:43:46  16  though that was a preliminary injunction ruling, you see.

14:43:49  17          So I think the bottom line here is that I don't

14:43:57  18  want to step on the prerogative of the Fifth Circuit by

14:44:08  19  making a ruling which impacts the merits of the case in a

14:44:16  20  way that the Fifth Circuit feels is within their

14:44:21  21  exclusive jurisdictions on some matters on appeal.  I

14:44:24  22  think that's the easiest way for me to put it.

14:44:27  23          And so nothing is happening now in the case

14:44:36  24  that causes us any urgency.  If this was something that

14:44:45  25  was going to cause us some urgency, then I would maybe

14:44:48  1  take a different view.  But I don't believe that it is.

14:44:54  2  Right now the United states Government has United States

14:45:08  3  Army troops, the Texas National Guard is down on the

14:45:12  4  border.  U.S. Army is down on the border.

14:45:17  5      The latest figures I saw is that the number of

14:45:21  6  people attempting to cross the border illegally have the

14:45:24  7  lowest it's been in a considerable amount of time.  And

14:45:37  8  the President has issued orders which allow state

14:45:44  9  officers to assist the United States Customs and Border

14:45:50  10  Protection, the border patrol, and other federal officers

14:45:54  11  to do their job.

14:45:55  12      Interestingly, he did not issue an order which

14:45:59  13  would in any way allow state officials to engage in

14:46:04  14  deportation activities, which is, in my view, if there's

14:46:11  15  a problematic aspect of SB 4, that's where it exists.

14:46:15  16      I issued a clarification order which I

14:46:23  17  mistakenly said it was at modification, which it really

14:46:27  18  wasn't.  But, in any event, it made it clear that this

14:46:32  19  Court was not going to be holding anyone in contempt for

14:46:38  20  assisting in accordance with the order of the President

14:46:43  21  or Governor Abbott in that regard.

14:46:48  22      And so there's really nothing here to be done

14:46:56  23  at the moment.  There's no huge influx of people, number

14:47:06  24  one.  We don't have anything to be done beyond what is a

14:47:18  25  legal issue, basically.  That's what we're dealing with.

```
14:47:22   1   We're dealing with a legal issue here.
14:47:24   2           And there is no question in my mind that this
14:47:29   3   matter will ultimately end up in the Supreme Court.  Now,
14:47:34   4   the United States has attempted to some degree to moot
14:47:40   5   that by dismissing itself out of as many cases as it can
14:47:45   6   dismiss itself out of, but it didn't help them in the
14:47:50   7   Eleventh Circuit, as you well know, because there are
14:47:52   8   individual plaintiffs in the Eleventh Circuit.
14:47:55   9           And it didn't help them here, in my view, at
14:47:59  10   least.  I know that the State takes a different position
14:48:02  11   as to the standing of the plaintiffs.  But even if this
14:48:05  12   case -- even if the Fifth Circuit found that they lack
14:48:09  13   standing, the standing issue would go to the Supreme
14:48:11  14   Court in this case and the Eleventh Circuit will go to
14:48:15  15   the Supreme Court.  That's what's going to happen.  And
14:48:19  16   it may be that the Fifth Circuit is holding its ruling
14:48:22  17   waiting for all of that to happen.  And this would not be
14:48:26  18   the first time.
14:48:28  19           I was involved, as some may remember, in the
14:48:34  20   big case involving the fetal burial case.  The Tenth
14:48:44  21   Circuit Court of appeals -- the Tenth Circuit case and
14:48:49  22   the Texas case were identical.  I mean, the cases were
14:48:53  23   identical.  Just like the Eleventh Circuit law and this
14:48:56  24   law, they're identical -- essentially identical.  And the
14:49:01  25   Tenth Circuit ruled that the law passed by Texas and by I
```

14:49:07  1   can't remember what state it was, but whatever state it

14:49:09  2   was, was unconstitutional, okay, on its face.

14:49:15  3   Unconstitutional.

14:49:18  4          I had a major hearing, and I ruled that the law

14:49:25  5   passed by Texas was not unconstitutional.  I upheld the

14:49:30  6   constitutionality of the statute.  That went up on

14:49:34  7   appeal.  The Fifth Circuit sat on that, understandably,

14:49:46  8   for a year -- over a year, almost two years, I think,

14:49:49  9   waiting for the Supreme Court to rule.

14:49:50  10          The Supreme Court ultimately reversed the Tenth

14:49:54  11   Circuit and found the law to be constitutional, in which

14:50:02  12   case my case was then moot because it was done.  In other

14:50:07  13   words, they agreed with the -- they disagreed with the

14:50:09  14   Tenth circuit and they agreed with my ruling, and so that

14:50:14  15   was it.  That was the end of the fetal burial case, which

14:50:18  16   now is still the law in Texas, of course.

14:50:21  17          So I think that may be why the -- I don't know.

14:50:28  18   I'm not trying to put -- I don't have the temerity to put

14:50:33  19   myself in the mind of the fine judges at the Fifth

14:50:35  20   Circuit.  I don't know why they're waiting, but it may be

14:50:39  21   that they're waiting to see what happens, whether the

14:50:42  22   Supreme Court takes -- takes up the Tenth Circuit matter.

14:50:46  23   We'll see.  Or this one.

14:50:58  24          So, in any event, I don't intend, obviously,

14:51:04  25   to -- I mean, if we just -- if time just continues to go

14:51:09  1    by and nothing happens, at some point I guess we're going

14:51:15  2    to have to try to do something.  But I have to try to do

14:51:23  3    it in way that doesn't impinge upon the Fifth Circuit.

14:51:26  4            I don't want to make a ruling here and then

14:51:28  5    say, Well, wait a minute.  You know, Judge Ezra couldn't

14:51:31  6    or shouldn't have done that because, you know, whatever.

14:51:44  7    It's our bailiwick.  You know, he's been deprived of

14:51:47  8    jurisdiction.

14:51:48  9            Now, the State called that to the -- to the

14:51:51  10   Fifth Circuit's attention, and they haven't done anything

14:51:54  11   about that.  They haven't made a ruling on that either.

14:51:57  12   They haven't said whether I was right or wrong or

14:52:00  13   otherwise, I don't think.  Have they?

14:52:03  14           MR. BRYANT:  No, Your Honor.

14:52:04  15           THE COURT:  And that was a long time ago.  So,

14:52:09  16   for the reason that I think they believe -- and I could

14:52:12  17   be wrong -- it doesn't make any difference now.  What

14:52:16  18   difference does it make?  And, as I said before, it was

14:52:27  19   certainly never my intent to step on the jurisdiction of

14:52:31  20   the Fifth Circuit.  That's not my job.  And I was just

14:52:37  21   trying to be careful.  I wanted to be sure that the

14:52:44  22   sheriffs -- that it was called -- people -- you know,

14:52:47  23   when I say people have called to my attention something,

14:52:51  24   I mean they've called to my attention something.  As if

14:52:54  25   I'm making this up in my head somehow.  I'm not.

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 14:52:58 | 1  | It was called to my attention that there were |
| 14:53:00 | 2  | some law enforcement officers in Texas, primarily county |
| 14:53:04 | 3  | sheriffs and so forth, who were concerned that if they |
| 14:53:08 | 4  | were to enforce -- down South, if they were to enforce |
| 14:53:14 | 5  | the what -- you know, SB 4, or to do something that |
| 14:53:19 | 6  | Governor Abbott wanted them to do, they would somehow be |
| 14:53:23 | 7  | violating my order. And I wanted to be sure that they |
| 14:53:27 | 8  | understood that they wouldn't be. |
| 14:53:28 | 9  | And to the extent that I shouldn't have issued |
| 14:53:37 | 10 | the clarification order, I'm certainly sorry for doing |
| 14:53:41 | 11 | that. But it did have the consequence of making sure |
| 14:53:45 | 12 | that these people understood that they were not going to |
| 14:53:49 | 13 | be caught between a rock and a hard place. It's not |
| 14:53:53 | 14 | fair. And that was the case. |
| 14:54:05 | 15 | Now, I can't think of anything else that we |
| 14:54:08 | 16 | need to deal with. |
| 14:54:11 | 17 | MR. BRYANT: Your Honor, can I just ask for a |
| 14:54:12 | 18 | point of clarification? |
| 14:54:14 | 19 | THE COURT: Sure. |
| 14:54:14 | 20 | MR. BRYANT: My understanding is that, for a |
| 14:54:19 | 21 | year or more, all proceedings in the trial court have |
| 14:54:24 | 22 | been stayed in both of these cases. |
| 14:54:27 | 23 | THE COURT: Yes. |
| 14:54:27 | 24 | MR. BRYANT: Except for some exceptions that -- |
| 14:54:30 | 25 | THE COURT: I need to have the answers filed. |

14:54:32  1  The answers need to be filed so that we actually have the

14:54:34  2  case in -- they need to file their answer.

14:54:37  3       The next step would be for you file a motion to

14:54:41  4  dismiss, okay?  But you can't file your motion to dismiss

14:54:46  5  yet because I can't rule on it.  So you're going to be

14:54:52  6  given leave to file your dismissal at a later date, when

14:54:58  7  we reengage the case.

14:55:01  8       What we would normally do -- what we would

14:55:03  9  normally do in a situation like this would be to

14:55:06  10  administratively close the case, which I have the

14:55:10  11  authority to do.  But I'm not going to administratively

14:55:13  12  close it because we have an active matter on appeal.  So

14:55:19  13  I'm not going to administratively close it.

14:55:21  14       MR. BRYANT:  So, Your Honor, we did file

14:55:23  15  motions to dismiss in both cases.

14:55:24  16       THE COURT:  I know you did.

14:55:25  17       MR. BRYANT:  And I apologize for our filing one

14:55:28  18  of them in the wrong case.  We'll correct that.

14:55:30  19       But my understanding is the Court is going to

14:55:32  20  go ahead and deny those and then --

14:55:35  21       THE COURT:  Without -- well, I'm going to -- I

14:55:37  22  hate to use the word "deny" because it leaves the

14:55:40  23  impression that I'm ruling on the merits.  I'm going

14:55:43  24  to -- I guess the word is deny as moot or vacate as moot.

14:55:51  25       THE CLERK:  The way the text order is usually

14:55:51  1  entered is denied without prejudice, subject to refiling

14:55:54  2  at a later time.

14:55:54  3          THE COURT:  Yeah.  That's what we'll do.  But

14:55:56  4  it has nothing to do with the merits.

14:55:58  5          MR. BRYANT:  Okay.  But otherwise --

14:55:59  6          THE COURT:  And you will have relief.

14:56:01  7          MR. BRYANT:  Otherwise, the case -- all

14:56:03  8  proceedings in the district court remain stayed?

14:56:05  9          THE COURT:  Yes.

14:56:06  10         MR. BRYANT:  Thank you.

14:56:06  11         THE COURT:  Except for you need to file

14:56:08  12  answers.

14:56:28  13         (*Sotto voce* discussion between the Court and the

14:56:28  14  Clerk)

14:56:28  15         THE COURT:  All right.  I understand, instead

14:56:29  16  of filing an answer, you filed a motion to dismiss,

14:56:32  17  right?  I understand that.  I understand federal

14:56:34  18  procedure.  I teach it.  But in this case I want you to

14:56:37  19  file an answer.  You will be given leave to file your

14:56:40  20  motion to dismiss at a later time.

14:56:50  21         MR. BRYANT:  Your Honor, as you know, our

14:56:51  22  motions to dismiss raise matters of subject matter

14:56:56  23  jurisdiction.

14:56:56  24         THE COURT:  Oh, I know.

14:56:57  25         MR. BRYANT:  And we believe the Court -- if the

| 14:56:59 | 1 | Court does not have subject matter jurisdiction -- |
| 14:57:02 | 2 | THE COURT:  Well, let me look at this.  Let me |
| 14:57:05 | 3 | look at this. |
| 14:57:06 | 4 | MR. BRYANT:  It doesn't seem right that we |
| 14:57:07 | 5 | should proceed to the merits. |
| 14:57:09 | 6 | THE COURT:  Yes.  Yes.  I understand what |
| 14:57:10 | 7 | you're saying.  I guess it really doesn't make -- we |
| 14:57:17 | 8 | already have some answers filed, I think.  We have some |
| 14:57:21 | 9 | answers filed already. |
| 14:57:23 | 10 | MR. BRYANT:  Yes, Your Honor.  I think some |
| 14:57:24 | 11 | defendants have -- I think Mr. Montoya filed an answer. |
| 14:57:28 | 12 | THE COURT:  Right.  So we do have some answers |
| 14:57:30 | 13 | filed.  All right.  I'm just trying to see how the -- the |
| 14:57:55 | 14 | least confusing path is here to try to make sure that |
| 14:58:07 | 15 | this thing just doesn't hang around. |
| 14:58:09 | 16 | I guess -- yeah.  As long as we have -- here's |
| 14:58:21 | 17 | what I'll do:  I think that you do make a good point |
| 14:58:23 | 18 | here.  Since your motion to dismiss really goes to |
| 14:58:32 | 19 | standing, that's your -- among other issues. |
| 14:58:35 | 20 | MR. BRYANT:  Standing and sovereign immunity. |
| 14:58:39 | 21 | THE COURT:  Yes.  That's right. |
| 14:58:42 | 22 | MR. BRYANT:  Because, Your Honor, to us the |
| 14:58:44 | 23 | case changed dramatically when the United States dropped |
| 14:58:48 | 24 | its suit.  Up to that time, sovereign immunity was not so |
| 14:58:54 | 25 | much an issue, and standing was not so much an issue. |

14:58:56  1   But we believe it is now.

14:58:58  2              THE COURT:  I think if they were seeking money

14:59:00  3   damages, I would dismiss the case out of hand.  They're

14:59:02  4   not seeking money damages.  They're seeking prospective

14:59:05  5   injunctive relief, which you can do against the

14:59:08  6   government.  So, at this point, my view on their ability

14:59:17  7   to proceed with the case has not changed, but I will keep

14:59:24  8   an open mind and I will look at whatever briefing comes

14:59:26  9   in.  And if I change my mind, I change my mind.

14:59:29  10             I certainly am not somebody who has never -- I

14:59:35  11  had a federal judge tell me one time that he was bragging

14:59:39  12  to me that he never granted a motion for reconsideration

14:59:45  13  in all of his years on the bench, and I thought that was

14:59:49  14  horrible.  Nobody can be right 100 percent of time.  I've

14:59:52  15  granted motions for reconsideration.  I'm not ashamed to

14:59:56  16  say it.  If I am shown that I have made an error, I will

15:00:04  17  correct it.  I don't think you need to brag about never

15:00:11  18  ever granting a motion for reconsideration.  He was

15:00:18  19  giving a speech and said, I don't grant motions for

15:00:20  20  reconsideration.  Okay.  Well, I do, if I think I've made

15:00:27  21  a mistake.

15:00:28  22             All right.  So where we are is that Mr. Montoya

15:00:37  23  is going to be representing the County in his official

15:00:42  24  capacity.

15:00:42  25             MR. MONTOYA:  Representing the Judicial

15:00:43  1    District.  Yes, sir.

15:00:43  2                THE COURT:  The judicial district.  Okay.

15:00:45  3    Mr. Montoya is going to be representing -- you're

15:00:48  4    representing the County.  He's representing the Judicial

15:00:51  5    District.  Fine.  As district attorney.  All right.

15:01:01  6                We will be dismissing -- I will be denying the

15:01:07  7    motions to dismiss without prejudice, subject to

15:01:10  8    refiling, at such time as is appropriate.  And I will

15:01:20  9    allow the parties to -- I mean, the obvious time limit

15:01:25 10    would be when the Fifth Circuit rules.  But if -- if they

15:01:29 11    don't rule, or if something else happens which makes it

15:01:34 12    germane for me to take that -- those matters up, then the

15:01:41 13    parties can bring that to my attention and I will look at

15:01:44 14    it and set it for -- if I agree, I will set it to lift

15:01:49 15    the timing and have you file your motions to dismiss.

15:01:55 16    And I'm going to stay the matter -- stay the case until

15:02:01 17    moved on by the parties or the Court while we wait.

15:02:09 18                I would also make a -- and I do this on the

15:02:13 19    record so that you can get a transcript and send it up to

15:02:17 20    the Fifth Circuit if you want to, which appears to be

15:02:20 21    something that the Attorney General's Office likes to do.

15:02:25 22                Rule 28(j) letters are meant for a particular

15:02:29 23    purpose.  The purpose of a Rule 28(j) letter is to advise

15:02:32 24    the Court of Appeals of a change in the law or a new

15:02:41 25    decision that's come down, or something else, to inform

| | | |
|---|---|---|
| 15:02:45 | 1 | an existing appeal on the legal merits of the case, not |
| 15:02:51 | 2 | necessarily to display one's displeasure or to advise the |
| 15:03:00 | 3 | Court of some statement that a judge may have made that |
| 15:03:05 | 4 | they don't like or they think the Fifth Circuit should be |
| 15:03:10 | 5 | aware of.  It kind of smacks, if you will, of |
| 15:03:18 | 6 | extrajudicial opportunity to just make another argument. |
| 15:03:23 | 7 | So, for instance, there was an Eleventh Circuit |
| 15:03:30 | 8 | ruling.  I have no problem at all with the parties |
| 15:03:34 | 9 | advising.  I think the plaintiffs advised the Fifth |
| 15:03:35 | 10 | Circuit, and you filed a perfectly fine response to that. |
| 15:03:40 | 11 | And that's what a 28(j) letter is. |
| 15:03:46 | 12 | It's not really supposed to be an opportunity |
| 15:03:49 | 13 | to just grab a transcript and run up to the Fifth Circuit |
| 15:03:55 | 14 | or the Ninth circuit or the Tenth Circuit, or the D.C. |
| 15:03:58 | 15 | Circuit with an additional argument.  Does it bother me? |
| 15:04:02 | 16 | No.  I could care less.  But I don't think it really |
| 15:04:09 | 17 | looks good, and it's almost, in my view, a suggestion to |
| 15:04:16 | 18 | the Fifth Circuit that you think they can be swayed or |
| 15:04:22 | 19 | somehow -- what's the best word? -- influenced as if |
| 15:04:33 | 20 | their ruling is predicated in some way, shape, or form on |
| 15:04:36 | 21 | what they think of me personally or something I might |
| 15:04:45 | 22 | have said that may not make somebody happy.  Because it |
| 15:04:52 | 23 | isn't.  These are judges that are going to rule basically |
| 15:04:55 | 24 | on the law. |
| 15:04:56 | 25 | I have the greatest respect in the world for |

| | | |
|---|---|---|
| 15:04:58 | 1 | the Fifth Circuit Judges.  And, quite frankly, I am very |
| 15:05:01 | 2 | good friends with many of them.  I mean, I would say |
| 15:05:05 | 3 | close friends is not too strong a statement.  And these |
| 15:05:15 | 4 | are good judges, and I'm close friends with judges up |
| 15:05:21 | 5 | there who have reversed me and that have affirmed me. |
| 15:05:29 | 6 | But that's their job.  My job is to make rulings, and |
| 15:05:34 | 7 | they understand that. |
| 15:05:41 | 8 | And so I -- you know, I just think if you want |
| 15:05:46 | 9 | to file a transcript, you can file it.  But somebody |
| 15:05:51 | 10 | ought to think twice about running up to the Fifth |
| 15:05:53 | 11 | Circuit every time I make a statement and you think, |
| 15:05:58 | 12 | well, gee, this -- maybe this will be a good chance for |
| 15:06:03 | 13 | me to reargue our position.  And that doesn't really go |
| 15:06:08 | 14 | over well. |
| 15:06:10 | 15 | You're too good of lawyers for that.  I have a |
| 15:06:13 | 16 | high degree of respect for the State Attorney General's |
| 15:06:17 | 17 | Office.  They've done good work in my court.  They have |
| 15:06:21 | 18 | achieved good results in my court.  And they do it |
| 15:06:31 | 19 | appropriately, and I have great respect for the lawyers |
| 15:06:34 | 20 | in this case.  You folks are good lawyers, and you're |
| 15:06:42 | 21 | just better than that. |
| 15:06:44 | 22 | So I don't know whether this is influenced by |
| 15:06:47 | 23 | something coming out of the General Counsel's Office or |
| 15:06:51 | 24 | what's going on here.  I hope not.  But it just -- it's |
| 15:06:59 | 25 | not what a 28(j) letter is all about. |

15:07:03  1          And I say this because I, as you know, sit on

15:07:06  2  the Ninth Circuit -- have for decades and decades --

15:07:12  3  three times a year.  And I see 28(j) letters used

15:07:20  4  appropriately, and I see them misused in cases.  And

15:07:24  5  I know what the Court of Appeals judges, including

15:07:28  6  very conservative ones like my dear friend

15:07:33  7  Diarmuid O'Scannlain, think when a lawyer files a 28(j)

15:07:35  8  letter that's just really basically an opportunity to

15:07:39  9  say, well, you know, this lawyer said this and this and

15:07:42  10  this judge said this, it doesn't go over well.

15:07:53  11          So I could have told you that in chambers off

15:07:55  12  the record, but I said it here.  So if you think I'm

15:07:57  13  wrong, if you want to go up to the Fifth Circuit, you can

15:08:00  14  go up to the Fifth circuit and say, Gee whiz.  Look what

15:08:04  15  Judge Ezra said.  He said we shouldn't be filing 28(j)

15:08:08  16  letters that have nothing to do with bringing new cases

15:08:12  17  to the Court's attention.

15:08:14  18          Now, I'm not telling you not to file a 28(j)

15:08:16  19  letter.  You can file a 28(j) letter anytime you want to.

15:08:20  20  It doesn't bother me.  It doesn't prejudice me against

15:08:24  21  you in any way, shape, or form.  And I'm just saying, you

15:08:30  22  know, a 28(j) letter is a 28(j) letter.  It's supposed to

15:08:33  23  be for one purpose and one purpose only, not for other

15:08:37  24  purposes.  And that's all I'll say on that subject, and

15:08:43  25  hopefully the last time I'll have to say it, or be --

15:08:47 1  think of saying it.  Well, regardless, I don't care if

15:08:50 2  you file another one.  I won't say anything about it.

15:08:53 3  It'll be all right with me.

15:08:55 4          All right.  Is there anything else the parties

15:08:58 5  would like to bring to my attention?

15:09:03 6          MR. BRYANT:  No, Your Honor.

15:09:04 7          MR. DONATTI:  No, Your Honor.

15:09:05 8          THE COURT:  You know, I just hope this case

15:09:07 9  doesn't turn out to be like one I handled in Arizona.  I

15:09:14 10 was appointed to that case when I was a pretty young

15:09:19 11 judge, and the Chief Judge of the Ninth Circuit appointed

15:09:22 12 me to handle the case, a pretty complex case.  And I

15:09:26 13 was -- I had done a lot of complex litigation, and he

15:09:30 14 knew that.  And I said to him, Gee whiz, Judge Goodwin,

15:09:34 15 why did you -- or Chief Judge Goodwin, why did you ask me

15:09:39 16 to handle this case?

15:09:40 17         He says, Because I think it will take so long.

15:09:44 18 If I appoint some judge that's 50 or 60 years old,

15:09:47 19 they'll die before it's over.  He says, This case will

15:09:51 20 take 25 years to get rid of.

15:09:54 21         And I said, You're kidding me?  Really?  I

15:09:57 22 hadn't looked at the case yet.

15:09:59 23         Well, I did -- it did take a long time.  I got

15:10:03 24 it done in 12 years.  So I don't want 12 years on this

15:10:11 25 case one way or the other.

15:10:13  1          So thank you very much for being here.  I

15:10:17  2   really do appreciate it.  If anything comes up that you

15:10:20  3   think that I need to be aware of, please let me know.  I

15:10:26  4   don't have any -- you know, if we need to have another

15:10:30  5   conference or we need to get together or we need to do

15:10:32  6   something, we can do that.

15:10:33  7          I haven't got any preconceptions about this

15:10:38  8   case.  I certainly have already said what I think about

15:10:41  9   some of the merits of the case.  I mean, I'm not going to

15:10:44  10  step away from my earlier rulings.  But that doesn't mean

15:10:47  11  that I won't revisit them if I think that I've made a

15:10:50  12  mistake.  I've said that before.

15:10:52  13         And I certainly have absolutely no animus at

15:10:57  14  all for anyone in this case, and certainly not the

15:11:02  15  Attorney General's Office, whom I think quite highly of,

15:11:06  16  and the plaintiffs who have done a great job for their

15:11:10  17  clients.

15:11:10  18         I'm kind of sad that the United States stepped

15:11:13  19  out of this case because I think there's an important

15:11:19  20  interest that needed to be vindicated one way or the

15:11:22  21  other, you know, and they were the parties that certainly

15:11:29  22  were in the primary position to be able to do it.

15:11:32  23         Now, I think they did step out of one case, and

15:11:35  24  that case got dismissed, because they were the only party

15:11:39  25  in the case.  I can't remember what Circuit that was.

```
15:11:44   1   Didn't they, Marie?  Am I right?
15:11:51   2            MS. MULLINS:  I don't remember.
15:11:51   3            THE COURT:  I thought there were three cases.
15:11:53   4   Weren't there three cases?
15:12:03   5            MS. MULLINS:  I think Judge Moses had one.
15:12:03   6            THE COURT:  This SB 4 type case?  You might
15:12:06   7   know.
15:12:08   8            UNIDENTIFIED SPEAKER:  I think the Eighth
15:12:10   9   Circuit, sir.
15:12:10  10            THE COURT:  Was it the Eighth Circuit that
15:12:11  11   dismissed?
15:12:12  12            UNIDENTIFIED SPEAKER:  Because the case had
15:12:13  13   been split by the plaintiffs that had been dismissed.
15:12:16  14   They withdrew to fight about prior plaintiffs who came
15:12:19  15   back in the case.
15:12:20  16            THE COURT:  Okay.  All right.  That's what it
15:12:21  17   was.  It was the Eighth Circuit.  But we do have the
15:12:23  18   Eleventh Circuit, and that's definitely going forward,
15:12:26  19   because they denied the motion to lift the stay.  So -- I
15:12:31  20   mean, the preliminary injunction, rather.  So that
15:12:34  21   case -- and they're in the same posture we're in right
15:12:36  22   now.
15:12:37  23            Because I think the District Court, the state
15:12:42  24   enforcement of that version of whatever it is.  I don't
15:12:45  25   know what it is.  It's obviously not SB 4.
```

15:12:48  1          What's confusing is now Governor Abbott is
15:12:51  2  going to be signing an SB 4, apparently, I read in the
15:12:55  3  newspaper.  But it's this year's SB 4.  They ought not to
15:13:02  4  reuse the numbers.  Somebody ought to get to the State
15:13:08  5  Senate and say, Don't reuse the numbers because everybody
15:13:10  6  is confused.  I thought, Government Abbott is going to
15:13:17  7  sign SB 4?  He already signed it once.
15:13:19  8          All right.  Thank you very much.  Court stands
15:13:21  9  in recess.
15:13:21 10      (End of transcript)
         11
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS          )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10     WITNESS MY OFFICIAL HAND this the 23rd day of June 2025.

11

12                              /S/ Arlinda Rodriguez
                               Arlinda Rodriguez, Texas CSR 7753
13                             Expiration Date:  10/31/2025
                               Official Court Reporter
14                             United States District Court
                               Austin Division
15                             501 West 5th Street, Suite 4152
                               Austin, Texas 78701
16                             (512) 391-8791

17

18

19

20

21

22

23

24

25